RAFAEL M. GONZALEZ, JR.
ACTING UNITED STATES ATTORNEY
ERIN C. BLACKADAR, IDAHO STATE BAR NO. 8996
SPECIAL ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1413

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>OLIVER YARDLEY,<br><br>　　　　　Defendant. | Case No. 1:21-cr-00119-BLW<br><br>**GOVERNMENT'S SENTENCING MEMORANDUM** |

The United States of America, by and through Rafael M. Gonzalez, Jr., Acting United States Attorney, and the undersigned Special Assistant United States Attorney for the District of Idaho, submits the following memorandum setting forth the government's position at sentencing. The government recommends that the Court sentence the Defendant to low-end sentence.

## LEGAL ANALYSIS

The Ninth Circuit has set forth a basic framework that district courts should follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

(1)　　Courts are to begin all sentencing proceedings by correctly determining the applicable sentencing guidelines range, precisely as they would have before *Booker*.

**GOVERNMENT'S SENTENCING MEMORANDUM - 1**

  (2)  Courts should then consider the § 3553(a) factors to decide if they support the sentence suggested by the parties. Courts may not presume that the guidelines range is reasonable. Nor should the guidelines factors be given more or less weight than any other. The guidelines are simply to be treated as one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence.

  (3)  If a court decides that a sentence outside the guidelines is warranted, then it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.

  (4)  Courts must explain the selected sentence sufficiently to permit meaningful appellate review.

*United States v. Carty*, 520 F.3d 984, 991-92 (9th Cir. 2008).

## SENTENCING CALCULATION

### I. Statutory Maximum and Minimum Sentence

The statutory maximum sentence for Count One is forty years' imprisonment, a mandatory minimum term of imprisonment of five years, a minimum of four years of supervised release, and a maximum fine of $5,000,000. 21 U.S.C. § 841(b)(1)(B). Count one also has a mandatory special assessment fine of $100. 18 U.S.C. § 3013.

### II. United States Sentencing Guidelines Calculation

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

  A. Offense Level Calculation

The Government agrees with the PSR that the Defendant's offense level is 31, which includes acceptance of responsibility. (PSR ¶ 32). The Government moves for the additional one-level reduction under U.S.S.G § 3E1.1(b), which was already taken into account by the guidelines calculation. If the Court follows its usual practice of taking into account the guideline

**GOVERNMENT'S SENTENCING MEMORANDUM - 2**

range based upon the mixture and substance of the methamphetamine, that total offense level is 23.

        B.        Criminal History Calculation

The Government agrees with the PSR that the Defendant's criminal history score is 10, resulting in a criminal history category of V. (PSR ¶ 58).

        C.        Advisory Guideline Range

An offense level of 31 with criminal history category of V results in an advisory guideline range of 168 – 210 months. If the Court follows its usual practice of granting a variance to take into account the guideline range based upon the mixture and substance of the methamphetamine, that advisory guideline range is 84 – 105 months.

**IMPOSITION OF SENTENCE**

**I.        Imposition of a Sentence under 18 U.S.C. § 3553**

        A.        18 U.S.C. § 3553(a) factors

                1.        The nature and circumstances of the offense

This case involved four controlled purchases of methamphetamine from the Defendant and Ashley Cates[1] ("Cates") in August and September of 2019. On four separate occasions, the Defendant and Cates sold methamphetamine to a confidential human source ("CHS"), with the final drug transaction including the sale of two firearms. (PSR ¶¶ 12-16).

On August 26, 2019, the Defendant and Cates delivered 50.5 grams of actual methamphetamine for $950 to CHS at a gas station in Fruitland, Idaho. (*Id.* at ¶ 13). Two days later, on August 28, 2019, the Defendant agreed to sell two additional ounces of methamphetamine to CHS for $950 at a gas station in Fruitland, Idaho. (*Id.* at ¶ 14). This

---

[1] Ashley Cates was indicted by a Boise Grand Jury on September 10, 2020 in a four-count indictment related to the underlying facts of the Defendant's case. (*United States v. Cates*, 1:20-cr-00213-DCN (D. Idaho).)

**GOVERNMENT'S SENTENCING MEMORANDUM - 3**

transaction was delayed due to the Defendant's belief that he observed undercover officers at the pre-arranged sale location. (*Id*.). The Defendant and Cates ultimately met CHS at an alternate location, where the Defendant entered a business while Cates delivered 26.6. grams of actual methamphetamine to CHS. (*Id*.). After this sale, law enforcement discovered that the Defendant and Cates only delivered one ounce of methamphetamine while CHS had paid for two. (*Id*.). CHS reached out to the Defendant and he arranged to deliver the remaining ounce the following day. (*Id*.). On August 29, 2019, Cates met CHS in Caldwell, Idaho and delivered 26.9 grams of actual methamphetamine. (*Id*. at ¶ 15.) Despite arranging this transaction, the Defendant was not present. (*Id*.)

On September 6, 2019, CHS, arranged to purchase three ounces of methamphetamine and two firearms from the Defendant for a negotiated price of $1,975. (*Id*. at ¶ 16). The Defendant and Cates met CHS at a business parking-lot in Caldwell, Idaho. The Defendant contacted CHS at their car, where CHS gave him money for the methamphetamine. (*Id*.) The Defendant and Cates drove to a residence, where the Defendant met with the source of the methamphetamine and then rejoined Cates in their vehicle. (*Id*.). Shortly thereafter, the Defendant and Cates re-contacted CHS, who was waiting in their vehicle. (*Id*.). Cates got into CHS's vehicle and informed CHS that they were supposed to drive forward, then the Defendant would pick her back up. (*Id*.). As CHS and Cates drove, she delivered a Cobra .380 caliber pistol, a Ruger model P90 .45 caliber pistol, and 80.9 grams actual methamphetamine. (*Id*.). CHS then gave Cates the remaining money for the firearms. (*Id*.) During the transaction, Cates told CHS that the .45 caliber pistol belonged to the Defendant and the Cobra .380 belonged to her. After the transaction, Cates returned to the vehicle where the Defendant was waiting, and they drove off.

**GOVERNMENT'S SENTENCING MEMORANDUM - 4**



*Methamphetamine packaged with the Cobra .380 caliber pistol, which the Defendant and Cates delivered on September 6, 2019.*

        2.    <u>The history and characteristics of the defendant</u>

The 46-year-old defendant has a lengthy criminal history, which began at the age of 18. (PSR ¶¶ 34-60). These convictions range from delivery and possession of controlled substances, to misdemeanor simple and domestic battery, and carrying concealed weapons. (*Id.*). During a November 2012 traffic stop, the Defendant was located with a six-inch blade knife, metal batons, a metal bat, push daggers, brass knuckles, and folding knives. (*Id.* at ¶ 51). The Defendant admitted ownership of the weapons and that he kept them for his protection. (*Id.*). Similarly, during a traffic stop of his motorcycle in March 2019, law enforcement located a sap impact weapon concealed in his waist area, multiple small weapons in his pockets, and several knives on his motorcycle. (*Id.* at ¶ 57). In addition to his criminal convictions, the Defendant is a known,

**GOVERNMENT'S SENTENCING MEMORANDUM - 5**

fully patched, member of the Outlaw Motorcycle Gang (OMG) Vagos Motorcycle Club. (PSR ¶ 12). Given these connections, the documented instances of carrying concealed weapons are troubling, especially because of the intersection of methamphetamine and firearms in the instant case.

To his credit, the Defendant had an approximate seven-year gap in his criminal history, during which he reportedly maintained steady employment and engaged in family life.  The Defendant married Ashley Cates in July 2018. (*Id.* at ¶ 64). Prior to her association with the Defendant, Cates led a crime-free life, but due to her involvement with the Defendant and actions in this case, she is spending the next five years in a federal prison. (*See United States v. Cates*, 1:20-cr-00213-DCN, ECF 52).

In the PSR, the Defendant admits to a lengthy substance abuse battle with marijuana, methamphetamine, and alcohol. (PSR¶ 70). Since 2008, the Defendant claims he only relapsed on methamphetamine once in 2018. (*Id.*). This statement is contradicted by his arrest for possession of methamphetamine on March 22, 2019. (*Id.* at ¶ 57). The reports from that encounter state the Defendant was arrested with 1.5 gram of methamphetamine on his person and he admitted methamphetamine was his drug of choice and he used the day prior. (*Id.*). While the defendant may have sworn off methamphetamine for personal use, this clearly did not prevent him from distributing approximately 6.5 ounces of actual methamphetamine in this case. His declaration of sobriety supports the proposition that he was not selling methamphetamine, and firearms, to support an addiction but rather because he is ingrained in criminal conduct.

Despite his personal progress, his pending criminal case, and his declaration of moving forward in life, the Defendant continues to associate with the Vagos.  (*Id.* at ¶¶ 8, 64; ECF 27). On August 21, 2021, just days before his scheduled change of plea in this case, the defendant

**GOVERNMENT'S SENTENCING MEMORANDUM - 6**

was photographed at a Vagos rally in Nampa, Idaho (see below). The Defendant apparently directed other Vagos members to conduct counter surveillance on officers. (*Id.*). While the Defendant was not observed engaging in illegal conduct, his continued association with the Vagos Motorcycle Club reveals a disregard of the seriousness of the situation for which he currently finds himself and contradicts his declaration of personal transformation.



*The Defendant at a Vagos Motorcycle Club function in Nampa, Idaho on August 21, 2021.*

3. <u>The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.</u>

**GOVERNMENT'S SENTENCING MEMORANDUM - 7**

Distributing methamphetamine and guns puts a great number of people at risk of harm. A low-end sentence reflects the seriousness of the offense, promotes respect for the law, and provides just punishment.

    4.    <u>The need to avoid unwarranted sentence disparities</u>

A sentence within the established guideline range avoids unwarranted sentence disparities. While Cates was charged and convicted based upon some of the same circumstances as the Defendant, they are not similarly situated. Most notably, Cates had no prior criminal convictions whereas the Defendant has a lengthy criminal history including several prior felony convictions. Although Cates is currently serving a 60-month sentence, the Defendant's history and characteristics warrant a longer sentence.

    B.    <u>Application of the Guidelines in Imposing a Sentence under 18 U.S.C. § 3553(b)</u>

The government's within-guidelines recommendation is based in part on the fact that such a sentence properly reflects the accumulated wisdom and expertise of the Sentencing Commission and serves the vital goal of uniformity and fairness in sentencing. The guidelines, formerly mandatory, now serve as one factor among several that courts must consider in determining an appropriate sentence. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). Nonetheless, "the Guidelines Commission fills an important institutional role:  It has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Id.* at 108-09 (internal quotation marks omitted). Thus, "the Guidelines Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'"  *Id.* (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).

**GOVERNMENT'S SENTENCING MEMORANDUM - 8**

The guidelines are the sole means available for assuring some measure of uniformity in sentencing, thereby fulfilling a key congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the guidelines, while carefully considering the § 3553(a) factors, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments. Therefore, "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6.

The guidelines deserve significant respect. The government recognizes that the guidelines are entirely advisory, and that a district court has discretion to vary from an advisory range, subject only to deferential appellate review for reasonableness. A district court, however, must consider the guidelines range, *see* § 3553(a)(4), and is usually well-advised to follow the Sentencing Commission's advice in order to assure fair, proportionate, and uniform sentencing of criminal offenders. Moreover, there are no other § 3553(a) factors in this case which mitigate against imposition of a sentence within that range; to the contrary, the § 3553(a) factors on balance support the imposition of the recommended guidelines sentence. Accordingly, the government recommends a low-end sentence.

## CONCLUSION

Application of 18 U.S.C. § 3553 supports a low-end sentence for the Defendant's commission of the crime of Distribution of Methamphetamine. The government submits that a low-end sentence is sufficient, but not greater than necessary, to accomplish the goals of sentencing, and that a lesser sentence is not supported by application of the 18 U.S.C. § 3553(a) factors.

Respectfully submitted this 3rd day of November, 2021.

**GOVERNMENT'S SENTENCING MEMORANDUM - 9**

RAFAEL M. GONZALEZ, JR.
ACTING UNITED STATES ATTORNEY
By:

*/s/ Erin C. Blackadar*

ERIN C. BLACKADAR
Special Assistant United States Attorney

**GOVERNMENT'S SENTENCING MEMORANDUM - 10**

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 3, 2021, the foregoing **GOVERNMENT'S SENTENCING MEMORANDUM** was electronically filed with the Clerk of the Court using the CM/ECF system, and that a copy was served on the following parties or counsel by:

| | |
|---|---|
| Craig Durham<br>FERGUSON DURHAM, PLLC<br>223 N. 6th Street, Suite 325<br>Boise, Idaho 83702 | ☐ United States Mail, postage prepaid<br>☐ Fax<br>☒ ECF filing<br>☐ Email |

                 */s/ Laura Rodriguez*
                 Legal Assistant